**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

               Plaintiff,

vs.                                                                                   No. CR 15-4281 JB

VINCENT STEVEN MARTINEZ,

               Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Opposed Motion for Sentence Reduction Under Guideline Amendment 821, filed April 19, 2024 (Doc. 63)("Motion"). The Court held a hearing on August 13, 2024. <u>See</u> Clerk's Minutes at 1, filed August 13, 2024 (Doc. 69). The primary issue is whether the Court should reduce Defendant Vincent Steven Martinez' sentence under 18 U.S.C. § 3582(c)(2), where there was a plea agreement under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure involving the sentences in two cases, because the United States Sentencing Commission has lowered Martinez' sentencing range in one case by enacting the newly effective and retroactively applicable criminal history "status point" calculation amendment to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). The Court denies the Motion, because a reduction in Martinez' sentence is not warranted in light of the 18 U.S.C. § 3553(a) sentencing factors.

## PROCEDURAL HISTORY

On June 3, 2016, Martinez pleaded guilty to: (i) four counts of Hobbs Act robbery, 18 U.S.C. § 1951(a); and (ii) violating the terms of his supervised release in an older federal case, CR 09-510, in the United States District Court for the District of New Mexico. <u>See</u> Plea Minute Sheet, filed June 3, 2016 (Doc. 50). The Plea Agreement is pursuant to rule 11(c)(1)(C) of the

Federal Rules of Criminal Procedure.  See Retroactive Guideline Amendment Memorandum at 1, filed January 26, 2024 (Doc. 62)("Probation Memorandum"); Amended Plea Agreement at 1, filed June 3, 2016 (Doc. 49)("Plea Agreement").  In the Plea Agreement, Martinez agrees to plead guilty to charges associated with two separate criminal cases.  See Plea Agreement at 6-7.  The first case is CR 09-0510, in which the Plaintiff United States of America brought bank-robbery charges against Martinez pursuant to 18 U.S.C. § 2113(a) and (d).  See Judgment in a Criminal Case at 1, No. CR 09-0510, filed September 8, 2010 (Doc. 109).  Martinez was on supervised release in CR 09-0510 when the United States brought charges against him in the second case, CR 15-4281, which is this case, for his string of armed robberies in August and September 2015.  See Plea Agreement at 6-7; id. at 4-6; Presentence Investigation Report at 27, filed June 10, 2016 (Doc. 51)("PSR").  One of his conditions of release in CR 09-0510 is "[t]he defendant shall not commit another federal, state, or local crime."  Amended Petition for Revocation of Supervised Release, No. CR 09-0510, filed September 18, 2015 (Doc. 120)("Revocation Petition").  Originally, the State of New Mexico charged Martinez for the August and September 2015 robberies; after Martinez was arrested on these State charges, the United States Probation Office ("USPO") filed a Revocation Petition in CR 09-0510.  See Revocation Petition at 2.

At the July 18, 2016, revocation hearing in CR 09-0510 and the sentencing hearing in this case, CR 15-4281, the Court sentenced Martinez to 18 months' imprisonment for violating his supervised release in CR 09-0510; the Guidelines imprisonment range for the revocation was 12 to 18 months.  See Draft Transcript of Hearing at 29:4-13, taken July 18, 2016 (Court)("2016 Tr.").[1]  The parties had agreed to the sentence of 18 months for the violation of supervised release

---

[1]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

in the Plea Agreement, and they had agreed it would run consecutively to the sentence imposed in CR 15-4281.  See Plea Agreement ¶ 19, at 6-7.  At the sentencing hearing, the Court states that he agrees with the parties that a sentence of 18 months is adequate to afford adequate deterrence and to protect the public; furthermore, the Court notes the sentence is a Guidelines sentence, so it avoids unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct.  See 2016 Tr. at 37:15-23 (Court).

In the same sentencing hearing on July 18, 2016, the Court also sentences Martinez to 121 months in prison for the four counts of Hobbs Act Robbery, 18 U.S.C. § 1951(a), in this case, CR 15-4281.  See 2016 Tr. at 19:1-11.  Martinez' Guidelines range for these charges was 97 to 121 months, see PSR ¶ 137, and the parties, in the Plea Agreement, agree to a specific sentence of 121 months.  See Plea Agreement ¶19, at 6-7.  At the sentencing hearing, the Court accepts the plea agreement in this case, CR 15-4281, and states that he is satisfied that the agreed sentence is justified.  See 2016 Tr. at 17:18-21 (Court).  The Court also states that he takes into account not only the guidelines but other sentencing goals.  See 2016 Tr. at 17:23-25; id. at 18:1 (Court). Moreover, the Court states that the parties propose a reasonable sentence that is sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.  See Tr. at 19:1-5 (Court).

In determining Martinez' Guideline range for the CR 15-4281 Hobbs Act Robbery charges, in the PSR, the USPO calculates Martinez' criminal history score as 5.  See PSR at ¶¶ 68-70.  Three of the 5 points result from his prior convictions.  See PSR at ¶¶ 68-70.  Two of the 5 points are status points added pursuant to U.S.S.G. §4A1.1(d), because he committed the charged robberies while under a criminal justice sentence, namely, supervised release in CR 09-510.  See PSR at ¶¶ 68-70.

In Martinez' Motion, he contends that he is eligible for a sentencing reduction, because "[t]he U.S. Sentencing Commission made Parts A and B, Subpart 1, of Amendment 821 retroactively applicable to previously sentenced defendants."  Motion, at 1.  Specifically, under Part A of the amendment, Martinez no longer receives status points for committing an offense under a criminal justice sentence, so his criminal history category is reduced from III to II.  See Motion, at 2.  The combination of a criminal history category of II with a total offense level of 28 results in a Guideline imprisonment range of 87 to 108 months for his charges in this case.  See Motion, at 2.  Martinez acknowledges that the United States agrees that he is eligible for a reduced sentence, but opposes his request.  See Motion, at 2.  In the United States' Response to Opposed Motion for Sentence Reduction Under Guideline Amendment 821, filed April 23, 2024 (Doc. 64)("Response"), the United States contends that reducing Martinez' sentence is not consistent with the 18 U.S.C. § 3553(a) factors, particularly the offense's nature and circumstances, the defendant's history and characteristics, and the need to protect the public from the defendant's further crimes.  See Response, at 5.

The Court held a hearing on the Motion on August 13, 2024.  See Clerk's Minutes at 1, filed August 13, 2024 (Doc. 69).  At the hearing, Martinez noted that the majority of his infractions in prison involve substance use and observed that two of his possession-of-dangerous-weapons infractions occurred within a two-month period in 2017.  See Draft Transcript of Hearing at 6:9-16 (taken August 13, 2024)(Saing)(" 2024 Tr.").  He also highlighted the educational opportunities of which he has taken advantage in prison.  See 2024 Tr. at 7:1-5 (Saing).  In response, the United States argued that Martinez received a great deal of benefit from his plea agreement, and contended that his history of violence and drug use demonstrate that he is a public safety risk.  See 2024 Tr.

at 8:16-17; 9:13-18 (Long).  The Court indicated its reluctance to unravel the plea agreement and orally denied the motion.  See 2024 Tr. at 11:1-11 (Court).

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges advisory.  See United States v. Booker, 543 U.S. at 261.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.  Accordingly, even though the Guidelines are not mandatory, courts must consult them for advice in arriving at an appropriate sentence.  See Peugh v. United States, 569 U.S. 530, 541-42 (2013).  The Guidelines provide a starting point for the court's determination of a proper sentence.  See Gall v. United States, 552 U.S. 38, 50 n.6 (2007)("[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."); Peugh v. United States, 569 U.S. at 541 ("The post-Booker federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review.").

Congress has directed sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> **(A)**     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> **(B)**     to afford adequate deterrence to criminal conduct;

**(C)**     to protect the public from further crimes of the defendant; and

**(D)**     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to further consider: (i) "the nature and circumstances of the offense," as well as the defendant's "history and characteristics"; (ii) the available sentences; (iii) the Guidelines; (iv) any pertinent Sentencing Commission policy statements in effect on the date of sentencing; (v) the policy favoring uniformity in sentences for defendants who commit similar crimes; and (vi) the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1), (3)-(7).

The United States Court of Appeals for the Tenth Circuit holds that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ." United States v. Cage, 451 F.3d at 593.  A court's careful consideration of the Guidelines is proper in light of the fact that "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." Rita v. United States, 551 U.S. 338, 349 (2007).

"[A] sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[2] Guidelines sentence. See Kimbrough v. United States, 552 U.S. at 90-91; Gall v.

---

[2]Attorneys and courts often say that the Guidelines are advisory, but it is more accurate to say that the resulting Guidelines ranges are advisory. See Gall v. United States, 552 U.S. 38, 46 (2007)("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory."). The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated to apply, however, a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

        The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

        . . . .

United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479, 2008 WL 2229550, at *6 (D.N.M. February

13, 2008)(Browning, J.). The Supreme Court has recognized, however, that sentencing judges are

"in a superior position to find facts and judge their import under § 3553(a) in each particular case."

Kimbrough v. United States, 552 U.S. at 89. A reasonable sentence is one that also "avoid[s]

unwarranted sentence disparities among defendants with similar records who have been found

---

> The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

## LAW REGARDING 18 U.S.C. § 3582(c)(2) SENTENCE REDUCTIONS

"Generally, a district court may not modify a term of imprisonment once it has been imposed."  United States v. Williams, 575 F.3d 1075, 1076 (10th Cir. 2009).  "A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so."  United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).  18 U.S.C. § 3582(c)(2) establishes a narrow exception to this general rule of finality "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ."  18 U.S.C. § 3582(c)(2).  When the Commission revises the Guidelines in a way that reduces the Guidelines range for "a particular offense or category of offenses," the Commission must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."  28 U.S.C. § 994(u).  "In this way the Act requires the Commission to decide whether amendments to the Guidelines should have retroactive effect."  Hughes v. United States, 584 U.S. 675, 681 (2018).  If an amendment applies retroactively, § 3582(c)(2) provides that "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).

The Tenth Circuit has explained that a defendant must satisfy three prongs[3] to qualify for a sentence modification under Section 3582(c)(2).  See United States v. C.D., 848 F.3d 1286, 1289 (10th Cir. 2017)("C.D.").  First, "the defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing."  C.D., 848 F.3d at 1289.  The first prong is jurisdictional: if the defendant fails to make this initial showing, "the district court lacks jurisdiction over the defendant's motion and the motion must be dismissed."

---

[3]Despite the clear pronouncement in United States v. C.D., 848 F.3d 1286 (10th Cir. 2017)("C.D."), that "Section 3582(c)(2) plainly tells us a defendant must overcome three distinct hurdles before he may obtain a sentence reduction," 848 F.3d at 1289 (emphasis in original), the Tenth Circuit has applied both a three-prong and two-prong analysis in unpublished § 3582(c)(2) decisions following C.D., compare United States v. Toombs, 712 F. App'x 791, 794 (10th Cir. 2017)("We have recently explained that a defendant must 'overcome three distinct hurdles before he may obtain a sentence reduction [under § 3582(c)(2)].'" (quoting C.D., 848 F.3d at 1289)(alterations in United States v. Toombs)), with United States v. Cota-Medina, No. 21-2063, 2022 WL 971894, at *2 (10th Cir. March 31, 2022)("In determining whether to grant a sentence reduction under § 3582(c)(2), the court engages in 'a two-step process.'").  District courts in the Tenth Circuit, likewise, continue to apply both a three-step and two-step analysis.  Compare United States v. Collazo, No. 09-CR-2621, 2020 WL 601943, at *2 (D.N.M. February 6, 2020)(Parker, J.)("The Tenth Circuit has explained that there are three prongs a defendant must meet to qualify for a sentence modification under 3582(c)(2)."), with United States v. Fabian-Hurtado, No. CR 21-0644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.)("When considering a retroactive Guidelines amendment, the Court engages in a two-step process.").

A two-pronged inquiry is appealing to a degree, because, under the three-prong analysis, "the second and third prongs overlap" to the extent that U.S.S.G. § 1B1.10 cmt. n.1(B), which courts must consider at the second step of the three-prong analysis, calls upon courts to evaluate the § 3553(a) factors that must be examined at the third prong.  United States v. Collazo, 2020 WL 601943, at *3.  As the Tenth Circuit formulates the two-step inquiry, however, the inquiry runs the risk of omitting evaluation of U.S.S.G. § 1B1.10 altogether, see United States v. Battle, 706 F.3d 1313, 1317 (10th Cir. 2013), and § 3582(c)(2) is clear that courts may reduce a defendant's sentence only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. 3582(c)(2).  The Court will apply, therefore, the three-prong analysis, because: (i) the Tenth Circuit's most recent published pronouncement on the matter plainly calls upon the courts to use a three-part test, see C.D., 848 F.3d at 1289; (ii) a three-step inquiry mirrors the similar and settled three-step inquiry courts undertake when evaluating a motion for compassionate release pursuant to § 3582(c)(2)'s sister statute, 18 U.S.C. § 3582(c)(1); and (iii) there is value in ensuring that the U.S.S.G. § 1B1.10 policy statement, and the important limitations to sentence reductions included therein, is given independent consideration.

C.D., 848 F.3d at 1289.[4]  See United States v. Munoz, 682 F. App'x 635, 636 (10th Cir. 2017)(remanding to the district court, because it "appear[s] that the district court denied the motion on the merits. It should have, instead, dismissed the matter for lack of jurisdiction").  Second, a defendant must show that "his request for a sentence reduction is consistent with the Commission's policy statements."  C.D., 848 F.3d at 1289.  U.S.S.G. § 1B1.10 is the policy statement concerning a sentence reduction resulting from an amended Guidelines.  See C.D., 848 F.3d at 1289.  The second requirement, unlike the first, is "not a jurisdictional prerequisite to § 3582(c)(2) relief." C.D., 848 F.3d at 1289.  "Third, the defendant must convince the district court he is entitled to relief in light of the applicable sentencing factors found in 18 U.S.C. § 3553(a)."  C.D., 848 F.3d at 1289-90.

Congress and the Sentencing Commission have placed three primary restrictions on the relief available under § 3582(c)(2).  First, courts cannot reduce the term of imprisonment below time served.  See U.S.S.G. § 1B1.10 cmt. n.3.  Second, courts may not reduce a defendant's

---

[4]Recently, the Tenth Circuit has called into question whether the § 3582(c)(2) analysis's first prong is jurisdictional.  See United States v. Warren, 22 F.4th 917, 926 n.6 (10th Cir. 2022)(acknowledging that, because 18 U.S.C. § 3582(c)(2) does not contain "an unequivocal statement from Congress" regarding its jurisdictional effect, "our precedent on this issue may need to be revisited," but declining to "seek en banc reconsideration of this question here").  As the Court has recognized, the Tenth Circuit recently has concluded that aspects of 18 U.S.C. § 3582(c)(1) are not jurisdictional.  See United States v. Haworth, No. CR 95-0491, 2023 WL 8112827, at *6 (D.N.M. November 22, 2023)(Browning, J.)(citing United States v. Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021)(concluding that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional); United States v. Hald, 8 F.4th 932, 942 n.7 (10th Cir. 2021)(declining "to read a jurisdictional element in § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication . . . to that effect" (quoting 18 U.S.C. § 3582(c)(1)(A))).  Nonetheless, because the Tenth Circuit has not revisited its holding that the Section 3582(c)(2) analysis's first step is jurisdictional, the Court must, as a district court, treat the first step as jurisdictional.  See United States v. Hald, 8 F.4th at 942 n.7 ("We acknowledge that this circuit has [held] that § 3582(c)(2)'s requirement that the defendant 'show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing' is a jurisdictional requirement that must be addressed first by the district court." (quoting C.D., 848 F.3d at 1289-90)).

sentence below the amended Guidelines range, unless the defendant originally received a below-Guidelines sentence because the United States made a motion to reflect the defendant's substantial assistance to authorities.  See U.S.S.G. § 1B1.10 (b)(2)(A)-(B).  In the substantial assistance case, a sentence "comparably less than the amended guideline range" may be appropriate.  U.S.S.G. § 1B1.10 (b)(2)(B).  See Dillon v. United States, 560 U.S. at 826-27 ("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range.").[5] Third, a district court may not grant a sentence reduction if the defendant's original sentence was "based on" a statutory mandatory minimum sentence rather than a Guidelines range.  18 U.S.C. § 3582(c)(2).  Mandatory minimums foreclose 18 U.S.C. § 3582(c)(2) sentence reductions even for defendants who escape the mandatory minimum by providing substantial assistance to law enforcement, because their sentences are "'based on' on their mandatory minimums and their substantial assistance to the Government, not on the sentencing ranges that the Commission later lowered." Koons v. United States, 584 U.S. 700, 702 (2018).  Consequently, for these defendants, a reduced sentence under 18 U.S.C. § 3582(c)(2) is not available.  See Koons v. United States, 584 U.S. at 702.

The Guidelines give specific guidance to courts contemplating sentence reductions.[6]  First, courts "shall determine the amended guideline range that would have been applicable to the

---

[5]This language from Dillon v. United States, 560 U.S. at 826-27, is more general than the text of U.S.S.G. § 1B1.10(b)(2)(B).  Section 1B1.10(b)(2)(B) only permits courts to reduce the defendant's term of imprisonment to a term that is less than the minimum of the amended guideline range if the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range pursuant to a government motion to reflect the defendant's substantial assistance to the authorities.  U.S.S.G. § 1B1.10(b)(2)(B).

[6]Sentence reduction hearings under this statute are not full resentencing proceedings.  See U.S.S.G. § 1B1.10(a)(3) ("[P]roceedings under 18 U.S.C. § 3582(c)(2) and this policy statement

defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). In making this decision, courts "shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1). See Freeman v. United States, 564 U.S. 522, 531 (2011)(Kennedy, J., plurality opinion)("The binding policy statement governing § 3582(c)(2) motions places considerable limits on district-court discretion. All Guidelines decisions from the original sentencing remain in place, save the sentencing range that was altered by retroactive amendment."). In other words, "district courts cannot recalculate aspects of a sentence that are unaffected by a retroactively applicable amendment to the Guidelines." United States v. Washington, 759 F.3d 1175, 1182 (10th Cir. 2014). The Supreme Court has interpreted "all other guideline application decisions" broadly, holding that courts generally cannot revisit sentencing courts' calculations. U.S.S.G. § 1B1.10(b)(1). In United States v. Dillon, the defendant argued that the sentencing court's decision to treat the Guidelines as mandatory violated his Constitutional rights under United States v. Booker, 543 U.S. 220 (2005). See United States v. Dillon, 560 U.S. at 831. The Supreme Court rejected the defendant's attempt to "recalculate" his sentence and correct the error, explaining that this aspect of his sentence was "outside the scope of the proceeding authorized by § 3582(c)(2)." United States v. Dillon, 560 U.S. at 831.

1. **Amendment 821.**

The Sentencing Commission has a responsibility to periodically "review and revise" its Guidelines. 28 U.S.C. § 994(o). It may choose to reduce the term of imprisonment "recommended

---

do not constitute a full re-sentencing of the defendant."); Dillon v. United States, 560 U.S. at 83 ("[Section] 3582(c)(2) does not authorize a resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission.").

in the guidelines applicable to a particular offense or category of offenses," but it must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."  28 U.S.C. § 994(u).  Congress has directed the Sentencing Commission to formulate its Guidelines "to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission." 28 U.S.C. § 994(g).

Before the Sentencing Commission promulgated Amendment 821, U.S.S.G. § 4A1.1(d) added 2 points to defendants' criminal history scores if they "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  United States Sentencing Commission, <u>Guidelines Manual</u>, § 4A1.1(d) (Nov. 2021).  A defendant's criminal history score determines in which of six criminal history categories the defendant will fall.  <u>See</u> U.S.S.G. Ch. 5, Pt. A.  Generally, "more status points result in a higher criminal history category and a longer range of imprisonment under the guidelines."  <u>United States v. Bailey</u>, No. 19-CR-142, 2024 WL 453619, at *2 (E.D. Pa. February 6, 2024)(Kenney, J.).

Amendment 821, which came into effect in November of 2023, <u>see</u> Supp. to App. C at 244, reduces the number of criminal history points a defendant receives for committing the charged offense under a criminal justice sentence.  <u>See</u> Supp. to App. C. at 234; United States Sentencing Commission, <u>Guidelines Manual</u>, § 4A1.1(e) (Nov. 2023).   The Amendment, which has retroactive effect and thus may be applied to closed cases, <u>see</u> U.S.S.G. § 1B1.10(a)(1), (d), revises how status points are calculated such that defendants with 7 or more criminal history points now receive 1, instead of 2 status points if they committed their offense while under a criminal justice sentence.  <u>See</u> U.S.S.G. § 4A1.1(e); Supp. to App. C at 235.  Amendment 821 also amends § 4A1.1

such that 1 status point is added only for those defendants committing an offense while under a criminal justice sentence who have over 7 status points.  See § 4A1.1(e); United States v. Bailey, 2024 WL 453619, at *2 ("[D]efendants with six or fewer criminal history points now receive zero status points.").  Additionally, Amendment 821 moves the language directing courts to apply the status-point increase from § 4A1.1(d) to § 4A1.1(e).  See Supp. to App. C at 235.  The result of Amendment 821's status-point reduction is that "approximately 11,500 [federal defendants] are eligible to seek a reduction in their current sentence."  Materials Relating to the 2023 Criminal History Amendment, U.S. Sent'g Comm'n (last visited May 8, 2024), https://www.ussc.gov/policymaking/materials-relating-2023-criminal-history-amendment.

As justification for Amendment 821, the Sentencing Commission explains that, while "an offender's criminal history calculation under the guidelines is strongly associated with the likelihood of future recidivism by the defendant, . . . status points add little to the overall predictive value associated with the criminal history score."  Supp. to App. C at 241 (citing U.S. Sentencing Commission, Revisiting Status Points (2022), https://www.ussc.gov/research/research-reports/revisiting-status-points).  According to the Sentencing Commission, "recent research suggests that 'status points' improve the predictive value of the criminal history score less than the original Commission may have expected," and, "[a]ccordingly, the Commission determined that it was appropriate to address several concerns regarding the scope and impact of status points."  Supp. to App. C at 241.  First, the Sentencing Commission observes that a defendant impacted by § 4A1.1(e) likely will already face a separate "consecutive punishment imposed upon revocations of supervised release."  Supp. to App. C at 241.  Second, the Sentencing Commission observes that "it is also possible that an offender's criminal history score would be independently increased

as the result of additional time imposed as the result of a revocation of probation or supervised

release for the offense that also results in the addition of status points." Supp. to App. C at 241.[7]

---

[7]While the Court is unable to do the research to question the Sentencing Commission's decision that status points add little to predict future criminal activity, the Court thinks that there are other reasons that status points may be valuable. Congress evidently thinks that it is important for the federal court to supervise defendants coming out of prison; but supervision of recently incarcerated individuals does not necessarily have to fall under the purview of the judiciary. Federal judicial supervision of defendants is a relatively novel practice, which only began in 1984 with the passage of the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987 (1984).  By contrast, in New Mexico, State probation officers are in the corrections department, and not in the State judiciary.  See Probation and Parole, New Mexico Corrections Department, www.cd.nm.gov/divisions/probation-and-parole.  The Court does not think the federal courts should be supervising their defendants, as supervising defendants is not a core judicial function. Nevertheless, Congress wants the federal courts to perform this supervision, and the Court is obligated faithfully to carry out this task -- even if it is not its favorite judicial obligation.

Supervised release is a major part of the Court's job.  In a border State with twenty-three Indian reservations and because the Court has been on the bench for twenty-one years, the Court has sentenced approximately 2800 defendants; the number of people on supervised release grows with years of service.  The District of New Mexico ranks fifth among the ninety-four districts in the number of filed criminal cases.  See U.S. District Courts - Criminal Defendants Filed, by Offense and District, Table D-3, United States Courts (2024), https://www.uscourts.gov/statistics/table/d-3/statistical-tables-federal-judiciary/2024/06/30.  By way of example, the Court held seventy-three revocation hearings in 2023.  Hence, the burden of supervised release on the Court is great and unwelcome.

The Court's view notwithstanding, once Congress has given the Court the task of supervising defendants coming out of prison, it must do the best to perform this responsibility faithfully.  While status points may not predict future criminal activity, they send a signal that the federal court takes supervised release seriously.  By amending the Guidelines to add Amendment 821, the Sentencing Commission has just weakened that signal in two ways.  First, the Sentencing Commission has told defendants that it is lowering the points they will receive when they violate supervised release.  Second, the Sentencing Commission tells everyone in prison that the lowering is retroactive, broadcasting to everyone in prison that the Sentencing Commission is lowering the points of supervised release.

The Court went to Seattle last year to the United States Sentencing Commission Conference and urged the Sentencing Commission not to make Amendment 821 retroactive.  Even if the Sentencing Commission going forward does not want to assign status points, there is no sound reason to make this change retroactive.  The Court works very hard to sentence its approximately 130 defendants each year, and then the Sentencing Commission tells the Court it must reevaluate these sentences.  Nothing in justice and fairness requires this additional work; there is nothing "wrong" with the first sentence.  A Sentencing Commission's ideological desire to decrease the prison population does not alleviate the burden that the process places on the courts and the signal that it sends to defendants that the system does not take supervised release as seriously as it used to do.

## ANALYSIS

The Court denies the Motion.  In applying the three-step analysis that <u>C.D.</u>, 848 F.3d at

1289, mandates, the Court first concludes that, because the Plea Agreement's proposed sentence

appears to have some grounding in Guideline ranges, the Court cannot completely rule out that, in

---

Finally, in the Court's view, some of the Sentencing Commission's observations do not reflect reality.  For example, the Sentencing Commission observes that defendants implicated by § 4A1.1(a) likely will already face a separate "consecutive punishment imposed upon revocations of supervised release."  Supp. to App. C at 241.  While the Court cannot say what every judge does, the Court rarely, if ever, makes the sentence for revocation fully consecutive. The Court works hard to come up with a reasonable sentence for the new crime.  To start slapping another few months and running it all consecutively sometimes undoes all the work on the new sentence. Typically, the Court gives the defendant a Guideline sentence for the revocation violation, but runs the entire sentence concurrently, except 1 month, which it runs consecutively.  This practice does not undo all of the hard work on the new sentence but gives the defendant a month for violating supervised release.  This month sends a signal to the defendant that the Court takes supervision seriously.  The Court orally describes to the defendant that this one month is specifically for violating supervised release; the defendant should remember that he or she is serving that last month because he or she violated supervised release.  The Court talks to defendants about the importance of supervised release and that, if he or she violates it, all of the Court's, as well as the parties', hard work to create a fair sentence will go out the window.

The current United States Attorney and his Assistants' positions in this case, and many others before the Court, are proof that the Sentencing Commission's policy changes are wrongheaded.  The current United States Attorney and his Assistants believe that the Court should not reduce Martinez' sentence.  <u>See</u> Response at 1.  The Court is sympathetic to the line attorneys' concern with lowering the guideline range for these sentences, and the Court encourages the line attorneys to direct their arguments to Main DOJ and to Attorney General Merrick Garland, who helped fill the spots that President Trump left open.  <u>See</u> <u>Acting Chair Judge Charles Breyer, Incoming Chair Judge Carlton W. Reeves Applaud Senate Confirmation of New Commissioners</u>, United States Sentencing Commission (August 5, 2022), https://www.ussc.gov/about/news/press-releases/august-5-2022.

As much as the Court disagrees with what the Sentencing Commission is doing with Amendment 821, particularly in its decision to make Amendment 821 retroactive, the Court also believes that elections have consequences.  President Trump, who passed the First Step Act, largely to attract African American votes, <u>see</u> Greg Miller, <u>Allegations of Racism Have Marked Trump's Presidency and Become Key Issue as Election Nears</u>, Wash. Post (July 2, 2020)("[F]ormer officials said that Trump only agreed to support the measure when told it might boost his low poll numbers with Black voters."), did not fill the vacancies on the Sentencing Commission to implement his Act.  President Biden filled these spots.  The Court will not let its own thoughts about policy block its duty to implement the Sentencing Commission's decision on policy.  The Court will attempt to apply the new rules as faithfully as it possibly can.

accepting the rule 11(c)(1)(C) plea agreement, Martinez was sentenced "based on a sentencing range that has subsequently been lowered."   Hughes v. United States, 584 U.S. 675 (2018)("Hughes")(quoting 18 U.S.C. 3582(c)(2)).   Second, the Court concludes that a reduction in Martinez' sentence is inconsistent with the U.S.S.G. § 1B1.10 policy statement.   Third, the Court concludes that Martinez is not entitled to relief in light of the § 3553(a) sentencing factors.

I.   **THE COURT RELIED MORE ON THE PARTIES' RULE 11(c)(1)(C) AGREEMENT THAN ON MAKING AN INDEPENDENT REVIEW OF THE GUIDELINES.**

When the Court gets a motion for a reduction in sentence using a new Guideline range, the Court knows what it would have done if it had the new range at the time of the original sentencing. If the Court sentenced at the low end of the range, it would have sentenced at the low end of the new range.   In those cases, the Court is comfortable giving the sentence it knows that it would have given at the original sentencing, if the new Guideline range had been applicable then.

Here, the situation is very different and more complex.   The Court never would have given the sentences it gave Martinez but for the rule 11(c)(1)(C) Plea Agreement.   First of all, both sentences were at the high end of the old ranges; the Court never would have done that on its own. Second, the rule 11(c)(1)(C) Plea Agreement ran the two sentences fully consecutively.   The Court rarely runs sentences fully consecutively, often running only one month consecutively.   See United States v. Martinez, 184 F.Supp. 3d 1209, 1228 (D.N.M. 2016)(Browning, J.)(demonstrating this practice); United States v. Corchado-Aguirre, CR 15-0393 JB, 2015 WL 10383207 at *7 (D.N.M. August 31, 2015)(Browning, J.)(demonstrating this practice).   Hence, the Court largely -- if not entirely -- subordinated the Guidelines ranges to the rule 11(c)(1)(C) Plea Agreement in arriving at the 18-month and 121-month sentences, and then running them fully consecutively.   Without the rule 11(c)(1)(C) Plea Agreement, the Court probably would sentence Martinez to 97 months

and 12 months, and run all but one month concurrently.  In other words, the Court most likely would have given him 98 months total.

The Guideline ranges had little impact on the Court.  The parties' agreement was all-important.  Lower Guidelines ranges would not have had any impact on the Court.  Arguably, lower Guidelines ranges might have impacted the parties' bargaining and ultimate agreement.  But the Court was likely to accept whatever agreement the parties reached.

Now that the Guidelines have been lowered, the new Guidelines do not have much impact on the Court's theory.  The parties' agreement remains the most controlling factor.  The parties worked out a conglomerated agreement with a number of moving parts; the new Guidelines ranges are not a major factor.  The Court remains comfortable with the agreement, and is not sure how it would go about rewriting it or disrupting it.

Nonetheless, as a matter of law, the Court concludes that Martinez' sentence is based on the Guidelines pursuant to Hughes.  At the risk of adding more prongs to an already multi-pronged analysis, the Court notes that it must answer two questions in addressing the C.D.'s first step: (i) was the defendant's sentence based on a Guideline range, at all; and (ii) if so, has the Sentencing Commission subsequently lowered that Guideline range.  "In the typical sentencing case, there will be no question that the defendant's Guidelines range was a basis for his sentence," because "[t]he Sentencing Reform Act requires a district court to calculate and consider a defendant's Guidelines range in every case." Hughes, 584 U.S. at 686 (citing 18 U.S.C. § 3553(a)).  Martinez' case, here, is not the typical sentencing case, because he entered into a rule 11(c)(1)(C) plea agreement, which binds the district court to the agreed-upon sentence if the court chooses to accept the agreement. See Fed. R. Crim. Pro. 11(c)(1)(C).  The interaction between a so-called "Type-C" agreement and a § 3582(c)(2) motion was unsettled until 2018, when the Supreme Court

decided Hughes.  In Hughes, the Supreme Court recognizes that its 4-1-4 decision in Freeman v. United States, 564 U.S. 522 (2011)("Freeman"), generated a split amongst the Courts of Appeals regarding which opinion controlled: the four-Justice plurality, or Justice Sotomayor's lone concurrence in the judgment.  See Hughes, 584 U.S. at 678.  In the Freeman plurality's view, Type-C sentences almost always are "based on the Guidelines" because the sentencing range is almost always a "relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement."  Hughes, 584 U.S. at 691 (Sotomayor, J., concurring)(quoting Freeman, 564 U.S. at 530).  In Justice Sotomayor's view, Type-C sentences are based on the plea agreement and not the Guidelines; nonetheless, Justice Sotomayor writes that Type-C sentences are eligible for reductions under § 3582(c) if the Guidelines form the basis of the sentencing range or of the specific term in the proposed agreement.  Hughes, 584 U.S. at 692 (Sotomayor, J., concurring)(citing Freeman, 564 U.S. at 534-44 (Sotomayor, J., concurring)).  Nonetheless, some years later, Justice Sotomayor joins the Hughes majority in full, which adopts the Freeman plurality view.  See Hughes, 584 U.S. at 691.

Hughes controls here.  Therefore, the Court concludes that it has jurisdiction to proceed to the second and third prongs of the C.D. inquiry, because Hughes states that "[a] sentence imposed pursuant to a Type-C agreement is no exception to the general rule that a defendant's Guideline range is both the starting point and a basis for his ultimate sentence."  Hughes, 584 U.S. at 686-87.  This rule holds true even when the parties agree to a specific sentence, because the Guidelines "prohibit district courts from accepting Type-C agreements without first evaluating the recommended sentence in light of the defendant's Guideline range."  Hughes, 584 U.S. at 687.  Accordingly, the Guidelines range is "'a relevant part of the analytic framework the judge used to determine the sentence or approve the agreement,'" so defendants who enter into specific-sentence

Type-C agreements satisfy the first § 3582(c)(2) condition.  Hughes, 584 U.S. at 687 (quoting Freeman v. United States, 564 U.S. at 530).

The Court concludes that, pursuant to Hughes, Martinez' sentence is based on the Guidelines, but not by much; the sentencing hearing record reflects that the Guideline range was part of the analytical framework the parties used to reach their agreement, which the Court accepted, and that Court used to sentence Martinez.  Importantly, the parties agreed-to sentence for the violation of supervised release in the rule 11(c)(1)(C) plea agreement is 18 months, the high end of the Guideline range.  See Plea Agreement ¶ 19, at 6-7; 2016 Tr. at 29:4-13(Court). Similarly, the parties' agreed-to sentence for the Hobbs Act charges in the rule 11(c)(1)(C) plea agreement is 121 months, the high end of the Guideline range for these charges.  See Plea Agreement ¶19, at 6-7; PSR ¶ 137, at 26.   At the sentencing hearing, Martinez' counsel acknowledges the Guidelines play a role, stating: "[W]e ask the Court to impose a sentence which in effect is at the upper end of the Guidelines range for the indictment." 2016 Tr. at 7:20-24 (Tallon).  Moreover, later in the hearing, the Court considers the Guidelines; when sentencing Martinez on the Hobbs Act charges, the Court notes: "I [] have considered the kinds of sentence[s] and range[s] established by the guidelines, and the Court agrees with the parties that a sentence of 121 months is adequate."  2016 Tr. at 18:8-12 (Court).  The Court also notes that, because the sentence is "a Guideline [sentence, it] avoids unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct."  2016 Tr. at 18:16-19.  These statements at the hearing demonstrate that Martinez' sentence was based on the Guidelines pursuant to Hughes.  "Hughes was explicit that eligibility for relief does not 'turn on the form of [a defendant's] plea agreement'"; moreover, Hughes also holds "that the later-amended Guidelines provision need only be 'a' relevant part of the sentencing calculus."  United States v. Smith, 896

- 21 -

F.3d 466, 472 (D.C. Cir. 2018)(Millett, J.)(quoting Hughes, 584 U.S. at 687)(emphasis in United States v. Smith, but not in Hughes).  The Court concludes, therefore, that the parties relied on the Guidelines to arrive at the rule 11(c)(1)(C) Plea Agreement, and the Guidelines did play a small role in the Court's decision to accept the Plea Agreement.[8]

After dispensing with Hughes, the Court next concludes that Amendment 821's retroactive application results in a lower Guideline imprisonment range than Martinez had at the time of his sentencing.  See C.D., 848 F.3d at 1289.  Amendment 821 applies retroactively.  See U.S.S.G. § 1B1.10(a)(1), (d); United States v. Claybron, 88 F.4th 1226, 1228 (7th Cir. 2023).  Amendment 821 changes the way criminal history status points are calculated for the purposes of establishing the defendant's criminal history category.  Section 4A1.1(e) adds "status" points to a defendant's criminal history score if the defendant "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release[ ] or escape status."  U.S.S.G. § 4A1.1(e).  Under Amendment 821's Part A, defendants with 7 or more criminal history status points now receive 1 status point rather than 2 additional status points, and defendants with less than 7 criminal history status points receive no additional status points if they committed their offense while under a criminal justice sentence.  See Supp. to App. C at 235;

_____

[8] The Court also notes that in Koons v. United States, 584 U.S. 700 (2018), the Supreme Court holds that when the top end of a Guidelines range falls below the applicable mandatory minimum sentence, and when a district court departs downward from the mandatory minimum because of the defendants' substantial assistance pursuant to U.S.S.G. § 5K1.1, the resulting sentence is "based on" the defendants' mandatory minimums and their substantial assistance, not the Guidelines range.  584 U.S. at 705.  In Koons, the district court "scrapped the ranges in favor of the mandatory minimums and never considered the ranges again."  Koons v. United States, 584 U.S. at 705.  Here, the parties' agreement drives the Court's sentencing decision, but as the 2016 sentencing transcript reflects, the Court does consider the ranges when sentencing Martinez; therefore, Koons does not govern the Court's analysis in this case.

United States v. Fabian-Hurtado, No. CR 21-644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.).

The 2016 PSR calculates Martinez' criminal history points as 5; 3 of the 5 points resulted from his prior convictions, and 2 of the 5 points are status points added pursuant to U.S.S.G. §4A1.1(d), because he committed the charged robberies while under a criminal justice sentence. See PSR at ¶¶ 68-70.  Pursuant to Amendment 821's Part A, however, the parties and the USPO agree Martinez no longer receives any status points added to his criminal history score.  See Motion at 2; Response at 4; Probation Memorandum at 1.  Removing the 2 status points changes his criminal history category to II and results in a Guideline range of 87 months to 108 months.  See Probation Memorandum, at 1.  Because this Guideline range is lower than Martinez' original Guideline range of 96 months to 121 months, PSR at ¶ 119, and Martinez' sentence was based on this higher Guideline range, as discussed above, the Court concludes Martinez satisfies the first C.D. prong.

## II.    A REDUCTION IN MARTINEZ' SENTENCE IS NOT CONSISTENT WITH SENTENCING COMMISSION POLICY STATEMENTS.

The Court holds that a reduction in Martinez' sentence is not consistent with U.S.S.G. § 1B1.10 due to his violent conduct while incarcerated.  U.S.S.G. § 1B1.10 is the pertinent policy statement addressing reductions in terms of imprisonment as a result of an amended Guidelines range.  See C.D., 848 F.3d at 1289; U.S.S.G. § 1B1.10(a)(1) ("As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.").  First, § 1B1.10(d) lists Amendment 821 as a covered retroactive amendment; thus, because this is the Amendment pursuant to which Martinez seeks a reduction, his request is, so far, consistent with the § 1B1.10 policy statement.  See U.S.S.G. § 1B1.10(a)(2)(A)(retroactivity requirement);   §   1B1.10(a)(2)(B)(Guideline-range-

lowering requirement).  Second, Martinez' requested 108-month sentence, <u>see</u> Motion, at 2, does not reduce his term of imprisonment "to a term that is less than the minimum of the amended guideline range," in this case, 87 months.  U.S.S.G. § 1b1.10(b)(2)(c).  Third, the Court observes that, because Martinez has been in continuous custody since October 1, 2015, <u>see</u> Probation Memorandum at 2, reducing his term to 108 months, would, at his point, violate § 1B1.10(b)(2)(c)'s prohibition on reducing the term of imprisonment to less than time served, <u>see</u> U.S.S.G. § 1B1.10(b)(2)(c).  Nonetheless, because the Court has discretion to determine whether to reduce a term of imprisonment, the Court concludes that the prohibition in § 1B1.10(b)(2)(c) does not bar Martinez' request, so long as the Court imposes a reduced sentence that is not below time served.  <u>See</u> U.S.S.G. § 1B1.10 cmt. 3 ("In no case, however, shall the term of imprisonment be reduced below time served.  <u>See</u> subsection (b)(2)(C).  Subject to these limitations, the sentencing court has the discretion to determine whether, and to what extent, to reduce a term of imprisonment under this section.").

Martinez runs into problems, however, because Application Note 1(B) to U.S.S.G. § 1B1.10 states that the Court "may consider" the defendant's post-sentencing conduct. U.S.S.G. § 1B1.10 cmt 1(B).  <u>See</u> <u>United States v. Osborn</u>, 679 F.3d 1193, 1196 (10th Cir. 2012). Specifically, the Tenth Circuit states that "the presence of prison disciplinary reports" on a defendant's record "is a proper basis for denying a motion under § 3582(c)(2)."  <u>United States v. Osborn</u>, 679 F.3d at 1196.  In <u>United States v. Verduzco</u>, 677 Fed. App'x. 486 (10th Cir. 2017),[9]

---

[9] <u>United States v. Verduzco</u> is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have generally determined that citation to unpublished opinions is not favored.  <u>See</u> 151

the Tenth Circuit holds that the district court does not abuse its discretion in denying the defendant's motion for a sentence reduction by relying, in part, on the defendant's "record of twenty-six disciplinary infractions during his incarceration, including multiple instances of assault, fighting, and possession of a dangerous weapon."  677 Fed. App'x. at 486.  Here, Martinez' disciplinary record while incarcerated includes three infractions, in particular, that counsel against reducing his sentence: (i) fighting, in 2021; (ii) possessing a sharpened weapon in his locker, in September of 2017; and (iii) possessing a seven-inch sharpened weapon in his mattress, in November of 2017.  See Response, at 4.  The Court is not inclined to reward Martinez with a sentencing reduction when he has engaged in violence and preparation for violence in prison.

## III.   THE § 3553(a) FACTORS DO NOT WEIGH IN FAVOR OF A SENTENCING REDUCTION.

Martinez has not been a model inmate, but the more important reason why the Court denies his motion has to do with how his particular 11(c)(1)(C) Plea Agreement interacts with the § 3553(a) factors.  "A defendant's eligibility for sentencing reduction does not give him an absolute right to reduction."  United States v. Collazo, 2020 WL 601943, at *3.  Rather, courts must ensure that a reduced sentence remains consistent with the § 3553(a) factors, which call upon district courts to evaluate, as pertinent here, "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the "need for the sentence . . . to reflect the

---

F.R.D. 470 (10th Cir. 1993)(containing General Order of November 29, 1993); 10th Cir. R. 36.3.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow citation to that decision.  Id.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Verduzco and United States v. Cota-Medina, 2022 WL 971894, have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence."  18 U.S.C. § 3553(a)(1), (a)(2)(A)-(B).  Despite that the Tenth Circuit does not require district courts to explain their consideration of the § 3553(a) factors, the Court will outline its reasoning.  See United States v. Chavez-Meza, 854 F.3d 655, 661 (10th Cir. 2017)("Even though district courts need not explain their decisions in sentence-reduction orders, that does not mean that they should not do so."), aff'd, 585 U.S. 109 (2018).

Pursuant to Hughes, the Court need not rewrite a defendant's Rule 11(c)(1)(C) agreement. "The district court can consider the benefits the defendant gained by entering a Type-C agreement when it decides whether a reduction is appropriate . . . ."  Hughes, 584 U.S. at 689.  Martinez' agreement benefitted him, because it insulated him from other charges and sentencing enhancements stemming from his string of robberies.  See Response at 6.   In the original indictment, the United States charges Martinez with violating the felon-in-possession provision, 18 U.S.C. §§ 922(g)(1), and 924(a)(2).  Indictment at 2, filed December 1, 2015 (Doc. 1).  Then, in a superseding indictment, the United States adds one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a).  See Superseding Indictment at 1, filed January 14, 2016 (Doc. 24).  In fact, the United States could have brought even more charges: it could have charged Martinez with three 18 U.S.C. § 924(c) violations.  See Response at 6.  Importantly, in 2016, second or subsequent § 924(c) convictions carry a twenty-five-year mandatory minimum.   See 18 U.S.C. § 924(c)(1)(C)(i) (2016).  One § 922(g)(1) charge, three § 924(c) charges, and the ensuing Armed Career Criminal sentencing enhancement under 18 U.S.C. § 924(e)(1) would have exposed Martinez to a 70-year mandatory minimum: fifteen years for the § 922(g)(1) charge, pursuant to § 924(e)(1), five years for the first § 924(c) charge, and twenty-five years for the second and third § 924(c) charges.  See Response at 6.

To avoid seventy years in prison, Martinez agreed to a rule 11(c)(1)(C) agreement proposing a specific sentence on the high end of the Guideline ranges for the Hobbs Act Robbery charges and the violation-of-supervised-release charges.  See Plea Agreement at 6-7.  Agreeing to a sentence at the high end of the Guideline ranges is, as Martinez' counsel states at the Sentencing Hearing, "unusual . . . but under the circumstances of Mr. Martinez' sentencing exposure under either one or both of those statutes, Armed Career Criminal or Career Offender, we made this agreement.  I think it's a fair agreement for Mr. Martinez."  2016 Tr. at 9:7-15 (Tallon).  Now, Martinez seeks a sentence reduction that seeks to undo this "fair agreement."  2016 Tr. at 9:15 (Tallon).  The Court declines to do so.  The parties' agreement proposed a specific sentence at the high end of the Guidelines ranges, and but for this agreement, the Court would have given Martinez a lower sentence.  If the parties thought that a lower sentence within the Guidelines ranges for the charged offenses was fair, they could have drafted a rule 11(c)(1)(C) agreement including two Guidelines ranges, not a specific sentence, knowing that the Court would likely accept the agreement and sentence Martinez to a term of imprisonment at the low end of the ranges.  They did not, however, draft this type of agreement.

In August and September of 2015, Martinez committed violent crimes with guns and knives that exposed him to massive amounts of prison time under then-existing statutory schemes; the Court concludes, therefore, reducing Martinez' sentence would not "reflect the seriousness of the offense" pursuant to § 3553(a)(2).  His rule 11(c)(1)(C) agreement gives him a chance to reenter society with much of his life ahead of him instead of remaining behind bars for many decades.  The significant benefit Martinez receives from the Plea Agreement, when weighed against the gravity of the additional charges that his criminal conduct warranted, leads the Court

to conclude that granting a reduction does not reflect the seriousness of Martinez' offenses and undermines the benefit the Plea Agreement provides to both parties.

**IT IS ORDERED** that the Defendant's Opposed Motion for Sentence Reduction Under Guideline Amendment 821, filed April 19, 2024 (Doc. 63), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
   United States Attorney
Shana B. Long
      Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Theodosia Johnson
Natalie Saing
  Assistant Federal Public Defenders
Albuquerque, New Mexico

     *Attorneys for the Defendant*